### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **RUDY E. DAVIS, JR.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION** |
| | ) | **No. 07-2323-KHV** |
| **SHAWNEE MISSION MEDICAL CENTER,** | ) | |
| **INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

Rudy E. Davis, Jr. brings suit against Shawnee Mission Medical Center, Inc. (the "Medical

Center"), EM Specialists, P.A., Dr. Robert Prosser and Dr. Ziana Liese.  Under Kansas common law,

plaintiff alleges that defendants' negligence during labor and delivery caused the death of his wife

and infant child.  This matter comes before the Court on the Motion To Dismiss (Doc. #23) which

Dr. Prosser and EM Specialists filed March 17, 2008 and Defendant Ziana Liese, M.D.'s Motion

to Dismiss (Doc. #25) filed March 24, 2008.  Also pending before the Court are Plaintiff's Motion

For Extension Of Time To Personally Serve Defendants (Doc. #32) filed April 1, 2008; and the

Motion To Strike Plaintiff's Purported Returns of Service (Doc. #36) and Motion To Quash Notice

of Deposition (Doc. #38) which Dr. Prosser and EM Specialists filed April 7, 2008.

EM Specialists, Dr. Prosser and Dr. Liese  assert that the Court should dismiss them because

(1) plaintiff filed the amended complaint three days after the deadline established in the scheduling

order; and (2) the statute of limitations bars plaintiff's claims.  On April 22, 2008, the Court

sustained plaintiff's motion for an extension of time to respond to defendants' motions and allowed

the parties to conduct limited discovery concerning service to determine when the action

commenced for purposes of the statute of limitations.  For reasons set forth below, the Court now

finds that the motions to dismiss should be sustained, and that the remaining motions should be

dismissed as moot.

### Legal Standards

A district court may impose sanctions for a party's failure to obey a scheduling order including any of the sanctions provided in Rule 37(b)(2)(B), (C), and (D).  See Fed. R. Civ. P. 16(f). The Court has considerable discretion when it comes to imposing sanctions under Rule 37(b), Fed. R. Civ. P.  See Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976).  In determining which sanctions should be imposed, the Court must consider the purposes to be served by the imposition of sanctions.  The primary goal of sanctions is to deter misconduct.  See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 398 (1990).  In considering the imposition of sanctions, the Court must consider on a case-by-case basis whether a party's failure was substantially justified or whether other circumstances make the imposition of sanctions inappropriate.  See Nat'l Hockey League, 427 U.S. at 642.

When deciding a motion to dismiss brought pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court must accept the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  Erickson v. Pardus, --- U.S. ----, 127 S.Ct. 2197, 2200 (2007).  When a movant presents matters outside the pleadings, the Court has discretion to convert a Rule 12(b)(6) motion into one for summary judgment.  See Lybrook v. Farmington Mun. Sch. Bd. of Educ., 232 F.3d 1334, 1341-42 (10th Cir. 2000).  When a court converts a Rule 12(b)(6) motion into a motion for summary judgment, "it must provide the parties with notice so that all factual allegations may be met with countervailing evidence."  Burnham v. Humphrey Hospitality Reit Trust, Inc., 403 F.3d 709, 713 (10th Cir. 2005) (where district court relied on facts presented in affidavits, Rule 12(b)(6) motion properly converted into motion for summary judgment).  Here, the

Court has given the parties notice and a reasonable opportunity to conduct discovery of pertinent facts.[1]  See GFF Corp. v. Associated Wholesale Grocers, 130 F.3d 1381, 1384 (10th Cir. 1997) (quoting Fed. R. Civ. P. 12(d)).  Accordingly the Court exercises its discretion to convert the Rule 12(b)(6) motions into motions for summary judgment.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets that burden, the nonmoving party must demonstrate that genuine issues remain for trial "as to those dispositive matters for which [he] carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991).

---

[1]     On April 22, 2008, the Court sustained plaintiff's motion for an extension of time to respond to defendants' motions and allow the parties to conduct limited discovery for the Court to rule on the service and statute of limitations issues.  The Court stated that it would allow the parties to present evidence relating to whether plaintiff substantially complied with Kansas service rules and whether defendants were made aware that the action was pending in this court.  See Order (Doc. #44) at 3.  Accordingly, the parties had notice of the Court's intent to resolve those issues on the merits, rather than on the pleadings.

The nonmoving party may not rest on the pleadings but must set forth specific facts.  Applied Genetics, 912 F.2d at 1241.

The Court must view the record in a light most favorable to the party opposing the motion for summary judgment.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  Anderson, 477 U.S. at 250-51.

### Factual Background

The following facts are uncontroverted or, where controverted, set forth in a light most favorable to plaintiff.

On July 23, 2007, plaintiff filed a complaint against the Medical Center, and Georgetown Family Care ("Georgetown"), alleging that their negligence on January 25, 2006 caused the death of his wife and unborn child.  On August 14, 2007, defendants filed a joint answer.  In the scheduling order, the Court granted plaintiff until Friday, November 30, 2007 to file an amended complaint.  See Scheduling Order (Doc. #13) filed November 2, 2007 at ¶ 2(a).

On November 30, 2007, Deborah Doak, secretary to plaintiff's counsel, prepared to electronically file that amended complaint, which retained the Medical Center but dropped Georgetown as a defendant and added EM Specialists, Dr. Prosser and Dr. Liese.  When Doak attempted to electronically file the amended complaint, she received the following error message: "Not a well formed PDF document."  Doak unsuccessfully tried to download new software to create an acceptable document.  Plaintiff's attorneys were in trial and she did not contact them to let them know that she was having problems.  Ultimately, Doak did not file the amended complaint on November 30, 2007, but by certified mail that day she did send copies of the amended complaint and

requests for waiver of service of summons to (1) Dr. Liese and Dr. Kevin J. Koch (the resident agent

of EM Specialists) at the Medical Center ; and (2) Dr. Prosser at St. Luke's Hospital South.[2]  At 8:15

a.m. the following Monday morning, December 3, 2007, Doak electronically filed the amended

complaint.  See Doc. #14.  Plaintiff did not seek leave to file the amended complaint out of time.

 EM Specialists

 On December 3, 2007, Jack L. Cool, who worked in the Medical Center mail room, signed

the card for the certified letter which Doak had mailed to Dr. Koch as the registered agent of EM

Specialists.  Carlee Massing, emergency physician coordinator for the Medical Center, picked up

the certified letter.  She placed it in another envelope and mailed it to Mary Beth Blake, counsel for

EM Specialists.  Citing attorney-client privilege, Blake has declined to state whether she received

the certified envelope.

 When EM Specialists did not return the waiver of service of summons within 30 days,

plaintiff's counsel retained Brian Caldwell to personally serve Dr. Koch as resident agent of EM

Specialists at the Medical Center.  On several occasions during February of 2008, Caldwell

attempted to do so.  Each time, Medical Center employees told Caldwell that Dr. Koch was not there

and refused to provide his schedule.[3]  On February 22, 2008, Massing (the emergency physician

coordinator) told Caldwell that Blake would accept the amended complaint and summons on behalf

of EM Specialists.  (Exhibit 2, Affidavit of Brian Caldwell).  Beginning that day, plaintiff's counsel

attempted to contact Blake to give her the amended complaint and summons.  She did not respond

---

 [2] On November 30, 2007, Dr. Liese worked at the Medical Center and Dr. Prosser worked at St. Luke's Hospital South.

 [3] Dr. Koch was present at the Medical Center on February 7, 9, 10, 13, 20 and 22, 2008.

until March 3, 2008, when the process server delivered a summons to her.  Blake did not accept the summons, however, because it was not directed to EM Specialists and no complaint was attached.  On March 10, 2008, plaintiff delivered to Blake a summons and amended complaint for EM Specialists.

### Dr. Robert Prosser

As noted, on November 30, 2007, Doak sent a certified letter containing a copy of the amended complaint and a waiver of service of summons to Dr. Prosser at his place of employment, St. Luke's South.  On December 3, 2007, Carol Collins, an employee at St. Luke's South, signed for the certified letter.  Although Collins does not recall the specific piece of certified mail, she stated that certified mail addressed to Dr. Prosser would have been routed to the Emergency Room Department on or about the date it arrived.  Dr. Prosser testified, however, that he did not receive the certified envelope.

When Dr. Prosser did not return a waiver of service of summons within 30 days, counsel for plaintiff retained Don Forbes to personally serve Dr. Prosser.  In early February of 2008, Forbes went to the emergency room department at St. Luke's South, where Dr. Prosser worked.  An employee told him that Dr. Prosser was on vacation from February 4 through 21, 2008.  According to the emergency room schedule, however, Dr. Prosser worked on February 6, 2008.  Forbes returned to the St. Luke's emergency room department on February 22, 23 and 25, 2008, but unnamed employees told him that Dr. Prosser was on vacation and refused to give him Dr. Prosser's schedule.[4]

---

[4]     The schedule indicates that Dr. Prosser worked at the emergency room department at St. Luke's South on February 24, 2008.

On March 1, 2008, Forbes went to Dr. Prosser's home, where two cars registered to Dr. Prosser were parked.  When Forbes knocked on the door, a small child appeared in a window. Forbes pounded on the door and rang the doorbell, but no one else responded.  Forbes left. When he returned within an hour or two, the same cars were there but no one answered when he knocked and rang the doorbell.

On March 4, 2008, attorney Scott Mach contacted plaintiff's counsel and agreed to accept service on behalf of Dr. Prosser.  On March 5, 2008, Mach accepted service on behalf of Dr. Prosser.

Dr. Ziana Liese

As noted, on November 30, 2007, Doak sent a certified letter containing a copy of the amended complaint and a request for waiver of service of summons to Dr. Liese at the Medical Center, her place of employment.  On December 5, 2007, H. O. Blackwell, a mail room employee, signed the return card and marked the box for "Agent."  Blackwell, however, is not Dr. Liese's employee or agent. Connie Pippin, Dr. Liese's office manager, picked up the certified envelope and took it to Dr. Liese.  Dr. Liese does not remember whether the return card was attached to the envelope when Pippin handed it to her.  Dr. Liese opened the envelope, read the documents and signed one of them. She testified that it was possible that she signed the waiver of service.  She gave the signed document back to Pippin and said "I don't know who's supposed to get this."[5] The record contains no evidence concerning what Pippin did with the signed document, and plaintiff has not filed a waiver of service of summons signed by Dr. Liese.

On December 17, 2007, Dr. Liese filed her answer, which stated that "plaintiff's claims may fail due to improper service of process."  See Answer (Doc. #17) ¶ 20.  The answer did not raise the

---

[5]     Dr. Liese believes that she kept the copy of the amended complaint, but she is not certain.

statute of limitations or lack of personal jurisdiction as affirmative defenses, but it stated that defendant "reserves the right to assert any affirmative defenses that may arise through discovery." Id. ¶ 23.  On March 31, 2008, plaintiff personally served Dr. Liese with a summons and a copy of the amended complaint.

<u>Return Of Service Notices</u>

On March 31, 2008, plaintiff filed return of service notices as to EM Specialists, Dr. Prosser and Dr. Liese, with return receipt cards signed December 3, 2007.  EM Specialists and Dr. Prosser have filed a motion to strike the returns of service because on December 3, 2007, plaintiff only sent them waiver of service letters and did not serve process.  See <u>Motion To Strike Plaintiff's Purported Returns of Service</u> (Doc. #36) filed April 7, 2008.

<strong><u>Analysis</u></strong>

EM Specialists, Dr. Prosser and Dr. Liese argue that the Court should dismiss the claims against them because (1) plaintiff filed the amended complaint three days after the deadline established in the scheduling order; and (2) the statute of limitations bars plaintiff's claims.

**I.      Leave To File Amended Complaint**

Defendants first assert that the amended complaint is a "legal nullity" because plaintiff filed it three days after the scheduling order deadline without leave of court.  In this case, however, defendants do not assert prejudice on account of the belated filing.  The three-day delay had no material impact on the proceedings.  Plaintiff's counsel has explained that computer issues and an on-going trial contributed to the failure to timely file the amended complaint.  Thus, to some degree, outside factors played a role in the delay.  Plaintiff apparently acted in good faith in attempting to file the amended complaint on the deadline, and defendants do not claim that plaintiff acted in bad faith or engaged in abusive litigation tactics.  The Court therefore finds that plaintiff's delay in filing

the amended complaint resulted from excusable neglect and allows plaintiff to file it out of time on December 3, 2007. See Becerra v. United Gov't of Wyandotte County/Kansas, City, Kan., 272 F. Supp.2d 1223, 1227 (D. Kan. 2003) (granting leave to amend after amendment deadline); cf. Durham v. Xerox Corp., 18 F.3d 836, 840 (10th Cir. 1994) (denial of leave to amend justified where plaintiff filed amended complaint three months after scheduling order deadline without explanation for delay).

**II.      Statute of Limitations**

Defendants argue that they are entitled to summary judgment because the statute of limitations bars plaintiff's claims against them. Kansas law provides a two year statute of limitations for medical malpractice and wrongful death actions. See K.S.A. § 60-513(a)(5) (two year statute of limitations for wrongful death actions); K.S.A. § 60-513 (c) (cause of action for medical malpractice accrues at time of act giving rise to cause of action unless fact of injury not reasonably ascertainable until later time). Plaintiff's wife and infant died on January 25, 2006, and Kansas law therefore required that plaintiff commence suit by January 25, 2008. As set out above, plaintiff's complaint was filed December 3, 2007. Unless plaintiff properly served defendants by March 3, 2008, however, within 90 days of filing the amended complaint, the action commenced on the date of service rather than the date of filing. See Kan. Stat. Ann. § 60-203(a) (civil action commenced at time of (1) filing petition if service obtained within 90 days, or (2) service of process if service of process not made within 90 days); see also Storts v. Hardee's Food Sys., Inc. 919 F.Supp. 1513, 1522 (D. Kan. 1996) (in diversity action, federal court cannot give state law cause of action longer life than if plaintiff had filed in state court); Walker v. Armco Steel Corp., 446 U.S. 740, 752 (1980) (where statute of limitations at issue in diversity action, court looks to state law to determine when action commenced). Defendants argue that plaintiff did not serve them until March 5, 2008 or later, and that the two-year statute of

limitations – which ran on January 25, 2008 – bars his claims against them.

A.    EM Specialists and Dr. Prosser

        Plaintiff appears to concede that he did not properly serve EM Specialists or Dr. Prosser

within 90 days of filing the petition.  Further, he does not argue that within 90 days of filing, he

substantially complied with service requirements, see K.S.A § 60-204,[6] or purported to make service

of process, see K.S.A. § 60-203(b).[7]  Rather, plaintiff argues that the statute of limitations does not

bar his claims because EM Specialists and Dr. Prosser (1) evaded service, thereby tolling the statute

of limitations under K.S.A. § 60-517 and (2) waived service and thus allowed the action to commence

on December 3, 2007 when he filed the amended complaint.

_____

        [6]      K.S.A. § 60-204 provides in relevant part:

        In any method of serving process, substantial compliance therewith shall effect valid
        service of process if the court finds that, notwithstanding some irregularity or
        omission, the party served was made aware that an action or proceeding was pending
        in a specified court in which his or her person, status or property were subject to
        being affected.

        [7]      K.S.A. § 60-203 governs commencement of actions and provides in pertinent part
as follows:

        (a) a civil action is commenced at the time of (1) Filing a petition with the clerk of
        the court, if service of process is obtained . . . within 90 days after the petition is
        filed, except that the court may extend that time an additional 30 days upon a
        showing of good cause by the plaintiff; or (2) service of process . . . if service of
        process . . . is not made within the time specified by provision (1).

        (b) If service of process . . . purports to have been made but is later adjudicated to
        have been invalid due to any irregularity in form or procedure or any defect in
        making service, the action shall nevertheless be deemed to have been commenced
        at the applicable time under subsection (a) if valid service is obtained . . . within 90
        days after that adjudication, except that the court may extend that time an additional
        30 days upon a showing of good cause by the plaintiff.

A plaintiff must seek the 30 day extension under § 60-203 before expiration of the 90 days.  See
Storts, 919 F.Supp. at 1522.

                                          -10-

1.     Tolling Under K.S.A. § 60-517

Plaintiff first asserts that EM Specialists and Dr. Prosser evaded service, thus triggering the tolling provision of K.S.A. § 60-517 which provides as follows:

> If when a cause of action accrues against a person he or she be out of the state, or has absconded or concealed himself or herself, the period limited for the commencement of the action shall not begin to run until such person comes into the state, or while he or she is so absconded or concealed, and if after the cause of action accrues he or she depart from the state, or abscond or conceal himself or herself, the time of the absence or concealment shall not be computed as any part of the period within which the action must be brought. This section shall not apply to extend the period of limitation as to any defendant whose whereabouts are known and upon whom service of summons can be effected under the provisions of article 3 of this chapter.

Courts apply a two-prong test under K.S.A. § 60-517: (1) whether plaintiff, in the exercise of due diligence, knew or should have known defendant's whereabouts, and (2) whether defendant concealed himself. See Morris v. Morris, 27 Kan. App. 2d 1014, 1017-18; 10 P.3d 771, 774 (2000). Plaintiff carries the burden to show facts sufficient to toll the statute of limitations. See 27 Kan. App.2d at 1019, 10 P.3d at 775.

As used in K.S.A. § 60-517, "conceal" contemplates that defendant "'passes under an assumed name, has changed his occupation, or acts in a manner which tends to prevent the community in which he lives from knowing who he is or whence he came.'" See Underhill v. Thompson, 37 Kan.App.2d 870, 876, 158 P.3d 987, 993 (Kan. App. 2007) (plaintiff's inability to locate defendant not sufficient to establish concealment where defendant does not attempt to conceal) (quoting Frey v. Aultman, Miller & Co., 30 Kan. 181, 184, 2 P. 168 (1883). "Knew or should have known," means that plaintiff knew defendant's whereabouts or, by the exercise of due diligence, should have known defendant's whereabouts. See Smith v. Burnett, Case No. 95-1533 , 1996 WL 447805, at *2 (D. Kan. April 3, 1996) (citing Johnson v. Miller, 8 Kan.App.2d 288, 289, 655 P.2d 475 (1982)). Due diligence requires the measure of prudence that a reasonable person

-11-

would make in light of the circumstances.  <u>Underhill</u>, 37 Kan.App.2d at 876, 158 P.3d at 993.

          <u>EM Specialists</u>

          As proof that EM Specialists evaded service, plaintiff points to evidence that on several occasions in February of 2008, Cardwell went to St. Luke's Hospital South and attempted to serve Dr. Koch, the resident agent of EM Specialists; that hospital employees refused to provide Dr. Koch's schedule; and that Massing told Cardwell that Blake would accept service but she did not return plaintiff's phone calls until March 3, 2008.

          Plaintiff has failed to meet his burden of proving that the statute of limitations should be tolled under K.S.A. § 60-517.  First, plaintiff has not shown that he exercised due diligence in searching for Dr. Koch.  Plaintiff merely sent a process server to Dr. Koch's place of business to attempt service on several occasions.  A reasonable person attempting to serve Dr. Koch would have taken further measures to locate him.  <u>See</u>, <u>e.g.</u>, <u>Underhill</u>, 37 Kan. App.2d at 876, 158 P.3d at 993 (hiring several investigators to locate defendants satisfied due diligence prong).  The Court finds that plaintiff did not use due diligence to determine Dr. Koch's whereabouts.

          Second, plaintiff has not established that defendant concealed himself, <u>i.e.</u>, that defendant or defendant's registered agent used an assumed name, changed his occupation or acted in a manner which tended to prevent the community from knowing his identity.  <u>See</u> <u>Underhill</u>, 37 Kan. App.2d at 877 (defendant who did not live or work under assumed name and did not use false social security number did not act as man trying to conceal his identity; defendant's lack of utility and phone accounts and forwarding address not sufficient to establish concealment under Section 60-517).  Plaintiff has not shown that he is entitled to invoke the tolling provision of K.S.A. § 60-517.

<u>Dr. Prosser</u>

As proof that Dr. Prosser evaded service, plaintiff asserts that he attempted to determine Dr. Prosser's whereabouts by sending a process server to his work place and home; that Dr. Prosser's staff told the process server that Dr. Prosser was on vacation when he was not; that Dr. Prosser's staff refused to provide his work schedule; and that no one at Dr. Prosser's home would answer the door even though a small child was there. This evidence, however, compels the conclusion that plaintiff knew where Dr. Prosser lived and thus could have served him by means other than personal service, <u>e.g.</u>, by leaving a copy of the summons and complaint at the house and mailing a notice by first class mail that a copy had been left at his house. <u>See</u> K.S.A. 60-303(d)(1). Plaintiff has not met his burden to show that the statute of limitations should be tolled.

2.    <u>Waiver</u>

Plaintiff argues that EM Specialists and Dr. Prosser waived service of process and thus allowed the action against them to commence on December 3, 2007, when plaintiff filed his amended complaint, as follows:

> Even if this Court finds the evidence of concealment insufficient under K.S.A. § 60-517 to extend the 90-day time frame for service, the acceptance by Defendants' respective attorneys of the First Amended Complaint and Summons . . . constitutes a waiver of service so that the commencement of the action under K.S.A. § 60-203 relates back to the filing of the First Amended Complaint on December 3, 2007. Under Fed. R .Civ. P. Rule 4(d), the Defendants had a duty to waive service in this action. The Defendants ultimately waived service and made an entry of appearance in this case without the necessity of service on the Defendants. Accordingly, K.S.A. [§]60-203(a) holds that the filing of the Petition or First Amended Complaint on December 3, 2007, would constitute the commencement of the action, and this was before the running of the two-year statute of limitations on January 25, 2008.

Under K.S.A. § 60-303(e), "[t]he voluntary appearance by a defendant is equivalent to service as of the date of appearance." In other words, defendants' voluntary appearance does not relate back to the filing of the first amended complaint on December 3, 2007. Consequently, the Court finds that

-13-

plaintiff did not commence the action as to EM Specialists and Dr. Prosser within the two-year statute

of limitations.  Because the statute of limitations bars plaintiff's claims against Dr. Prosser and EM

Specialists, the Court dismisses them from this lawsuit.

B.    Dr. Liese

        Plaintiff asserts that the statute of limitations does not bar his claims against Dr. Liese for four

alternative reasons: (1) Dr. Liese waived the statute of limitations defense because she did not raise

it in her answer; (2) Dr. Liese signed a waiver of service on December 5, 2007 and plaintiff's action

against her therefore commenced on December 3, 2007, when plaintiff filed the amended complaint;

(3) on November 30, 2007, plaintiff substantially complied with Kansas rules for service by certified

mail under K.S.A. § 60-204, see K.S.A. § 60-303(c); and (4) plaintiff purported to make timely

service and therefore is entitled to an extension of time to correct service under K. S. A. § 60-203(b).

        1.    Waiver of Statute of Limitations Defense

        Plaintiff asserts that Dr. Liese waived any statute of limitations defense because she did not

raise it in the answer which she filed on December 17, 2007.  See K.S.A. § 60-208(c) (pleading shall

set forth affirmative defenses).  When Dr. Liese filed her answer on December 17, 2007, however,

the statute of limitations had not run.[8]  Dr. Liese did not waive a defense which was not yet available

by failing to assert it.[9]  On March 24, 2008 – after the statute of limitations ran – Dr. Liese filed a

---

        [8]    Dr. Liese points out that her answer expressly alleged that "[p]laintiff's claim may
fail due to improper service of process," see Answer (Doc. #17) at ¶ 20, but purported to reserve the
right to assert any affirmative defense that arise through discovery.  See id. at ¶ 23.  The Federal
Rules of Civil Procedure do not recognize any such "preservation of rights," and it has no bearing
on the Court's analysis.

        [9]    In general, the only defenses that are irrevocably waived by answering an original
complaint are those that involve "the core issue of a party's willingness to submit a dispute to
judicial resolution," such as defenses related to personal jurisdiction, venue, process and service.
(continued...)

motion to dismiss plaintiff's amended complaint on statute of limitations grounds.[10]  Dr. Liese's

original answer did not waive the statute of limitations defense because it had not yet run, and there

is no other answer to consider; therefore, there is no waiver of the statute of limitations defense.

     2.   <u>Waiver Of Service</u>

     Plaintiff asserts that Dr. Liese signed a waiver of service of summons pursuant to Fed. R. Civ.

P. 4(d) in early December of 2007, and therefore the action against her commenced on December 3,

2007 – the date that plaintiff filed the amended complaint.  Under Rule 4(d), to obtain a waiver of

service, plaintiff must mail defendant a request for waiver of service.  Defendant must then return the

signed waiver of service to plaintiff, and plaintiff must file the waiver with the court.  If defendant

fails to return the waiver, then plaintiff must effectuate service in a manner provided in subdivision

(e), (f) or (g) of Rule 4.  <u>See</u> Fed. R. Civ. P. 4(d)(5).  Here, Dr. Liese did not return the waiver to

---

    [9](...continued)

<u>See</u> <u>Ramada Franchise Sys., Inc., v. Tresprop. Ltd.</u>, 75 F. Supp.2d 1205, 1214 (D. Kan. 1999) (quoting <u>Shields v. Citytrust Bankcorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994) further citations omitted).  Accordingly, affirmative defenses, such as statute of limitations, which essentially involve a request for judicial resolution of the dispute, may be first raised in an answer to an amended complaint.  <u>See</u> <u>Asare v. Pegasus Airwave, Inc.</u>, No. 96-C-8199, 1998 WL 259524, at *5 (N.D. Ill. May 15, 1998) (no waiver of statute of limitations defense); <u>Pucci v. Litwin</u>, 828 F.Supp. 1285, 1297 (N.D. Ill. 1993) (no waiver of Rule 9(b) defense); <u>see also</u> <u>Expertise, Inc. v. Aetna Fin. Co.</u>, 810 F.2d 968, 973 (10th Cir. 1987) (no waiver of statute of limitations defense from defendant's failure to plead in answer where defense included in pretrial order); <u>cf.</u> <u>Washington Ave. Invs., Inc., v. Kansas City</u>, 213 Kan. 269, 515 P.2d 744 (Kan. 1973) (failure to raise affirmative defense at trial waives defense on appeal).

    [10]    When Dr. Liese filed her answer and motion to dismiss, she was apparently proceeding on the assumption that even though service on December 5, 2007 may have been improper, she may have waived service before filing her answer on December 17, 2007.  After plaintiff served Dr. Liese on March 31, 2008, Dr. Liese did not amend her answer or file a motion to dismiss to assert the statute of limitations defense.  In her reply brief, Dr Liese states that "if the Court feels that [she] should amend [her] pleadings at this point since the statute of limitations has run to assert that defense of statute of limitations, [she] would request leave of Court to do so."  Doc. #61 at 6.  Because the Court sustains her motion to dismiss, however, no amendment is necessary.

plaintiff and plaintiff did not file the waiver with the Court.  Consequently, plaintiff did not effectuate

service on defendant under Rule 4(d).[11]  See Bernard v. Husky Truck Stop, 45 F.3d 439 (Table), 1995

WL 4087, at * 1 (10th Cir. Jan. 6, 1995) (no waiver of service under Fed. R. Civ. P. Rule 4(d) where

plaintiff never filed such waiver with court).

      3.    Substantial Compliance

      Plaintiff next asserts that he substantially complied with Kansas service requirements on

December 3, 2007, when he sent Dr. Liese a copy of the amended complaint and a request for waiver

of service form by certified mail.  K.S.A. § 60-204 provides in relevant part as follows:

> In any method of serving process, substantial compliance therewith shall effect valid
> service of process if the court finds that, notwithstanding some irregularity or
> omission, the party served was made aware that an action or proceeding was pending
> in a specified court in which his or her person, status or property were subject to being
> affected.

Plaintiff asserts that he substantially complied with Kansas law for obtaining service of process by

certified mail under K.S.A. § 303(c), which provides in relevant part as follows:

> Service of process by return receipt delivery shall include service effected by certified
> mail . . . to the party addressed, in each instance evidenced by a written or electronic
> receipt showing to whom delivered, date of delivery, address where delivered, and
> person or entity effecting delivery. . . .  [T]he . . . party's attorney shall cause a copy
> of the process and petition or other document to be placed in a sealed envelope
> addressed to the person to be served in accordance with K.S.A. 60-304, with postage

---

[11]    Plaintiff cites Hunter v. Kimberlin, 682 F. Supp. 495 (D. Kan. 1988), for the
proposition that plaintiff effected service when Dr. Liese signed the waiver, even though she did not
return it.  In Hunter, a diversity action which applied Kansas law, plaintiff sent defendant a state
court petition, notice and acknowledgment form prescribed by K.S.A. § 60-314 (now repealed).
Defendant signed the acknowledgment form but did not return it to plaintiff or file it with the court.
The court found that the defendant's execution of the acknowledgment form effected service by
mail.

      Here, plaintiff has not demonstrated that Dr. Liese actually signed the waiver.  Dr. Liese
testified that she read the waiver and the accompanying amended complaint, and that she signed a
document and handed it to her office manager.  Moreover, Hunter is inapposite because the
legislature has repealed the statute on which it relied.

> or other delivery fees prepaid, and the sealed envelope placed in the custody of the person or entity effecting delivery. . . .  Service of process shall be considered obtained under K.S.A. 60-203, and amendments thereto, upon the delivery of the sealed envelope.

To effectuate service by certified mail in Kansas, plaintiff must deliver a copy of the summons and complaint to defendant.  In this case, plaintiff did not mail a copy of a summons to Dr. Liese and the clerk did not issue a summons for Dr. Liese until March 31, 2008.  Plaintiff appears to argue that the notice and waiver form which he sent to Dr. Liese constitute an adequate summons under state law. Section 60-302 provides that the summons "shall be signed by the clerk, dated the day it is issued, be under the seal of the court and shall be deemed sufficient if in substantial compliance with the form set forth by the judicial council."  This language clearly contemplates that a summons must be issued by the clerk of the court.  See Cook v. Cook, 32 Kan. App.2d 214, 220, 83 P.3d 1243, 1247 (2003) (no substantial compliance where plaintiff failed to serve defendant with summons; defendant's actual  knowledge of suit not substitute for service).  The notice and waiver of service form does not comply with the form of summons required by K.S.A. § 60-302.  The Court therefore finds that plaintiff cannot show substantial compliance under K.S.A. § 60-204.

    4.    <u>K.S.A. § 60-203(b)</u>

Plaintiff asks the Court to afford him a second chance to serve Dr. Liese under  K.S.A. § 60-203(b) which provides as follows:

> If service of process or first publication purports to have been made but is later adjudicated to have been invalid due to any irregularity in form or procedure or any defect in making service, the action shall nevertheless be deemed to have been commenced [at the time plaintiff filed the complaint] if valid service is obtained or first publication is made within 90 days after that adjudication, except that the court may extend that time an additional 30 days upon a showing of good cause by the plaintiff.

Plaintiff asserts that he purported to serve Dr. Liese on November 30, 2007, when he sent her the

amended complaint and request for waiver by certified mail.

In Grimmett v Burke, 21 Kan. App.2d 638, 906 P.2d 156, 164 (Kan. App. 1995), the Kansas Court of Appeals limited the phrase "purports to have been made" to situations where defendant had actual notice of the suit.  Here, Dr. Liese filed an answer and does not deny that she had notice of the suit when she read the complaint and request for waiver on December 5, 2007.  Grimmett, however, also required plaintiff to show that (1) the original service appeared to be valid and the returns by the process server indicated that the service was valid, (2) plaintiff believed in good faith that service was valid and detrimentally relied on that validity and (3) plaintiff had no reason to believe that defendant was contesting service until after the statute of limitations had run, and had no opportunity to take steps to correct the defective service.  See Grimmett, 21 Kan. App.2d at 647-48, 906 P.2d at 164.

Applying the first Grimmett factor, whether the original service appeared to be valid, plaintiff sent Dr. Liese a copy of the amended complaint with a request for waiver which stated that "this is not a formal summons or notification from the Court."  Thus, the letter and accompanying amended complaint did not appear to be valid service.  See Troxell v. Fedders of N. Am. Inc., 160 F.3d 381, 383 (7th Cir. 1998) (Rule 4(d) does not abolish defendant's right to proper service of process); Day v. Iomega Corp., 182 F.3d 931, 1999 WL 355678, at *2 (10th Cir. June 3, 1999) (Federal Rules clearly contemplate that if defendant refuses to waive formal service of process plaintiff is required to formally serve process).  Plaintiff therefore has not established the first Grimmett factor, i.e. that the original service appeared to be valid and that returns by the sheriff's office or other process servers indicated that the service was valid.

As for the second Grimmett factor, whether plaintiff believed in good faith that service was valid and detrimentally relied on that validity, plaintiff cannot argue that he believed in good faith

-18-

that his Rule 4(d) letters effectuated valid service.  In fact, his letter to Dr Liese expressly indicated that it was not a formal summons or notification from the Court.

Finally, plaintiff cannot satisfy the third Grimmett factor, i.e. that he had no reason to believe Dr. Liese was contesting service until after the statute of limitations had run, and thus had no opportunity to correct the defective service.  On December 17, 2007 –  well before the statute of limitations ran – Dr. Liese filed an answer which asserted that service might be improper.  Plaintiff thus had an opportunity to correct the defective service within the statutory period but made no attempt to do so.  Even viewing the record in a light most favorable to plaintiff, the Court finds that for purposes of K.S.A. § 60-203(b), he did not purport to make service on Dr. Liese on November 30, 2007.

As noted, plaintiff properly served Dr. Liese with a summons and amended complaint on March 31, 2008.  Because he did not serve Dr. Liese by March 3, 2008 – within 90 days of filing the amended complaint – the action commenced on the date of service.  The two-year statute of limitations ran on January 25, 2008.  The Court therefore finds that the statute of limitations bars plaintiff's claims against Dr. Liese.

**IT IS THEREFORE ORDERED** that the Motion To Dismiss (Doc. #23) which Dr. Prosser and EM Specialists filed March 17, 2008 and Defendant Ziana Liese, M.D.'s Motion to Dismiss (Doc. #25) filed March 24, 2008 be and hereby are **SUSTAINED**.

**IT IS FURTHER ORDERED** that Dr. Prosser and EM Specialists' Motion To Quash Notice of Deposition (Doc. #38) and Motion To Strike Plaintiff's Purported Returns of Service (Doc. #36) both filed April 7, 2008, and Plaintiff's Motion For Extension Of Time To Personally Serve Defendants (Doc. #32) filed April 1, 2008 be and hereby are **OVERRULED** as moot.

Plaintiff's claims against Shawnee Mission Medical Center, Inc. remain in the case.

-19-

**IT IS FURTHER ORDERED** that the **stay** on discovery is hereby **lifted**, effective immediately, so that plaintiff's case may proceed against Shawnee Mission Medical Center.

Dated this 27th day of October, 2008 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge